### JAMES TURLEY *v.* PETER COUCHMAN'S ADM'R.

**Trusts—Purchaser of Land.**

The circumstances were held to show that the purchaser of land at execution sale purchased and held the land in trust for a third person who remained in possession, took part in the negotiations and paid the purchase price.

**Limitation of Actions—Continuing Trust.**

The statute of limitations held not to constitute a bar to an action on a continuing trust.

**Abatement and Revival—Waiver of Right to Revivor.**

Where, after remand of a cause by the Court of Appeals, the defendant filed an amended answer without an order of revival at the instance of the plaintiff's administrator, defendant waived his right to insist upon and claim revivor.

**Estoppel—Answer in Another Action.**

An answer of defendant in another action cannot operate as an estoppel against him, where it does not appear that the answer induced plaintiff to change his position or to surrender or release any claim or right that he then asserted or held.

APPEAL FROM MONTGOMERY CIRCUIT COURT.

June 28, 1873.

OPINION BY JUDGE LINDSAY:

There is no direct evidence establishing an agreement on the part of Turley to purchase and hold in trust for Couchman the land seized and sold, under Matthew Kirk's execution, and upon which Turley at the time held a mortgage. But considering the testimony of Stewart, the grossly inadequate price at which the purchase was made, the fact that Couchman was permitted to remain in possession, without the payment of rent, that he took part in the negotiations for the sale, received a portion of the money paid by Garret, and satisfied Garret upon the rescission of the contract by giving him a field of corn as a forfeit, we can not escape the conclusion that some such agreement was entered into either before or after the execution purchase, and that it was for several years acted upon by both parties. The fact that Turley induced Couchman to execute the paper bearing date September 21, 1853, shows that he was conscious that at that time the existence of the trust could be established and the paper executed by him, on the same day agreeing to donate to Andrew Couchman the balance remaining of the price for which the land might be sold after deducting what was due him from Peter Couchman, and the purchase money paid on the execution purchase shows that he then expected there would be a balance due to Peter Couchman upon settlement.

The statute of limitation did not present a bar to Couchman's suit, the trust, although existing in Nowle, was a continuing trust. In addition to this fact, the purchase money for the land did not come to Turley's hands until after the 1st day of January, 1854,

and suit was instituted on the 4th day of January, 1859. It is for this purchase money that Couchman sues, and we can not determine from the record that he failed to sue for the period of five years after his cause of action accrued.

If it would under ordinary circumstances have been necessary for Couchman's administrator to have had the action formally revived, after the return of the cause from this court in 1868, Turley waived his right to insist upon such formal reviver, by filing an amended answer and proceeding with the cause as though the order of reviver had been entered. The answer filed by Couchman in the suit of Hally can not operate as an estoppel upon him to assist his claim against Turley. It does not appear that said answer induced the latter in any wise to change his position or to surrender or release any claim or right that he then asserted or held. The statements in the answer may be regarded and treated as admissions upon the part of Couchman but not such as are conclusive. They certainly do not conclude him in this case, for we find Turley long after it was filed, in the two papers executed September 21, 1853, and in the negotiations with Redman for the sale of the land after that time, unmistakably conceding that the trust then existed.

The answer may be considered in another aspect, viz., as evidence that the arrangement between Turley and Couchman was entered into for the fraudulent purpose of preventing Couchman's creditors from subjecting his property to the payment of their debts, but Turley in all his pleadings takes especial care to negative any such presumption by insisting that his purchase at the execution sale was made in good faith, and that Couchman, after the date of his deed, held and owned no interest whatever in the land. The court therefore can not refuse appellee relief upon the grounds that the parties conspired to commit a fraud, without determining that the party benefited by the refusal had sworn to his pleadings in this case, knowing them to be false. Besides this Hally was not defrauded, his debt was paid, and Couchman in his answer to his suit did not state that any fraudulent arrangement had been entered into between himself and Turley, but exactly the contrary. The last answer of Turley is inconsistent with all his previous pleadings. If he agreed with Couchman that he and his wife should occupy the Clay Lick farm so long as either of them lived, in consideration of the surrender of all further claims on him on account of the land,

it is strange that in his answer of September 4, 1868, he should set up a claim for the rent of that identical farm. His own pleadings and the proof in which he attempts to set up a settlement with Couchman utterly negative the idea that any such settlement was ever made. Alexander, who pretends to have been present when the settlement was made, says it was about three years after Couchman moved to the Clay Lick farm. This must have been in 1857 or 1858. Schooler fixes it after the institution of this suit, and says that Couchman told him that it was for the purpose of compromising the same. This would fix the date subsequent to January 4, 1859. But these witnesses speak of the surrender of a $1,000 note. The only note approximating that sum that Turley ever held on Couchman is the note mentioned in the mortgage for $935, and Turley in his original answer filed February 17, 1859, says that said note was executed to secure him in his suretyship, to Waggoner and others, whom he virtually concedes Couchman paid off. In his amended answer of 1868 he says he surrendered said note after the sale of the land to Redmon. It is impossible to reconcile the testimony of appellant's witnesses and his own pleadings, hence the defense which was evidently an afterthought must be rejected.

The only difficulty in the case is to determine the amount of off-sets that should be allowed to appellant. The proof as to these off-sets is unsatisfactory, and it may well be doubted whether any of them are sufficiently pleaded, and whether appellees' objection to the filing of the amended answer in which they are set up, viz., the amendment allowed to be filed September 29, 1868, ought not to have been sustained.

We will, in this matter, however, follow the action of the circuit judge, and therefore approve the allowance to Turley of claims to the amount of $1,189.34. It is a matter of doubt whether the rent of the Clay Lick farm was equal to the interest on the balance due from Turley to Couchman, but as it is not shown at what time the deferred payments were collected from Redmon by Turley, nor whether they bore interest, and as it is proved that Turley paid debts for Couchman while he lived on the Clay Lick farm, and after 1854, we are not satisfied that the court erred in declining to allow interest until November 15, 1863, the date of Couchman's death. The plea of limitation upon the part of Couchman's administrator was properly disregarded as to the claims established by

the proof. The payment by Turley of Couchman's debts should be regarded as a satisfaction *pro tanto* of the claim of the *cestui que trust* against the trustee. There may have been some errors committed in allowing Turley credit, but they were as to small amounts and as upon the whole case we are of opinion that the substantial rights of neither of the parties were prejudiced by the judgment, it must be *affirmed* upon both the original and cross-appeals.

*Turner, Cornelison, Simpson, for appellant.*

*Reid, Breckenridge, Buckner, for appellee.*